IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**GENERAL STAR NATIONAL**
**INSURANCE COMPANY,**

        Plaintiff,

v.                                                                                         Civil Action No. 5:12-CV-26
                                                                                                    (BAILEY)

**EDWARD A. DIPINO,**
**GREGORY CRISLIP,**
**TANYA CRISLIP,**
**BANK OF AMERICA, N.A. d/b/a**
**BANK OF AMERICA HOME LOANS f/k/a**
**COUNTRYWIDE HOME LOANS, INC.,**
**APPRAISAL SERVICES, INC.,**
**BAC HOME LOANS SERVICING, LP f/k/a**
**COUNTRYWIDE HOME LOANS SERVICING, LP, and**
**JOHN DOE HOLDER,**

        Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>
<u>**ABSTAINING FROM HEARING DECLARATORY ACTION**</u>

Pending before this Court are plaintiff General Star National Insurance Company's Motion for Partial Summary Judgment against All Defendants [Doc. 12], filed May 4, 2012; defendants Gregory Crislip's and Tanya Crislip's Motion to Dismiss or Stay [Doc. 18] and Motion to Stay Briefing [Doc. 19], both filed May 25, 2012; and defendant Edward A. DiPino's Motion to Dismiss or, in the Alternative, Motion to Stay Proceedings [Doc. 22], filed June 18, 2012. These motions have since been fully briefed and are now ripe for decision. Having reviewed the record and considered the arguments of the parties, this Court concludes that the motions to dismiss should be **GRANTED** and the remaining motions should be **DENIED AS MOOT**.

1

## BACKGROUND

**I.    Factual Allegations**

    **A.    Underlying State Court Action**

In 2005, Gregory and Tanya Crislip purchased their home in Brooke County, West Virginia, for approximately $68,000.  In early 2007, the Crislips received a mail solicitation from Bank of America, N.A. d/b/a Bank of America Home Loans f/k/a Countrywide Home Loans, Inc. ("BofA") to refinance their home loan.  The Crislips responded to the phone number provided and completed an application over the phone.

BofA subsequently directed its appraisal management company, Landsafe Appraisal Services, Inc. ("Landsafe"), to obtain an appraisal on the Crislips' home.  The appraisal, completed by a local appraiser named Edward A. DiPino, represented that the value of the home was $120,000.  This amount was communicated to the Crislips and relied upon by BofA in the final loan application that the Crislips were asked to sign at the closing.  Based upon the appraisal, BofA originated the Crislips' loan in the amount of $94,902.

In early 2008, the Crislips began to struggle making their regular monthly payments, and by mid-2008, the Crislips had fallen behind by about two months.  The Crislips then submitted a hardship letter to their servicer, BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP ("BAC").  In response, BAC presented the Crislips with a repayment plan that increased their monthly payments. Unable to perform under the offered repayment plan, the Crislips requested a loan modification.  BAC subsequently discouraged the Crislips from making payments during its consideration of their request for a loan modification.  Despite these instructions, BAC began to assess and demand payment of late fees.

In May 2009, the Crislips resubmitted a hardship letter and financial information supporting their request for a loan modification after BAC indicated that neither was on file. During a subsequent telephone call, BAC informed the Crislips that they had been approved for a loan modification to commence in July 2009. Shortly thereafter, however, the Crislips received a letter notifying them that their loan modification had been denied because the "loan [was] in bankruptcy." The Crislips had not filed bankruptcy in July 2009.

In September 2009, the Crislips received a notice of foreclosure. When the Crislips called BAC, they were assured that they would receive a loan modification. BAC subsequently offered the Crislips a loan modification that provided for monthly payments constituting over 75% of their income. Based upon their financial condition, the Crislips were compelled to reject the loan modification as proposed.

In December 2009, the Crislips discovered that the true market value of their home was about $70,000.

### B.    Instant Declaratory Action

General Star National Insurance Company ("General Star") issued a professional liability insurance policy to named insured Edward A. DiPino for the policy period May 31, 2009, to May 31, 2010 (the "Policy"). The Policy includes coverage limits of $500,000 per claim, with aggregate limits of $1,000,000, subject to a $500 per claim deductible.

The insuring clause of the Policy provides that General Star "will pay on behalf of [DiPino] all sums which [DiPino] shall become legally obligated to pay as Damages," which is defined as not including "punitive or exemplary damages . . . ." (Policy at § I and § VII, ¶ E). The insuring clause also provides that coverage is triggered only by claims based on or arising out of an act, error, or omission in Dipino's rendering of "Professional Services,"

which is defined as including "services performed by [DiPino] in [his] capacity as an appraiser of real estate . . .." (Id. at § 1 and § VII, ¶ M).

The Policy excludes coverage for any claim against DiPino "based on or arising out of a dishonest, fraudulent, criminal or malicious act or omission, or intentional misrepresentation, (including, but not limited to, actual or alleged violations of state or federal anti-trust, price-fixing, restraint of trade or deceptive trade practice laws, rules or regulations) committed by, at the direction of, or with the knowledge of [DiPino]." (Id. at § VI, ¶ A) ("Exclusion A").  The Policy excludes coverage for any claim against DiPino "based on or arising out of actual or alleged . . . Bodily Injury," which is defined as including "emotional distress." (Id. at § VI, ¶ E and § VII, ¶ B) ("Exclusion E").  The Policy excludes coverage for any claim against DiPino "based on or arising out of any guarantee or promise of future status, performance or valuation in the course of performing Professional Services . . .." (Id. at § VI, ¶ P) ("Exclusion P").  The Policy excludes coverage for any claim against DiPino "based on or arising out of Professional Services rendered by any person or entity other than [DiPino]."  (Id. at § VI, ¶ X) ("Exclusion X").  Similarly, the Policy excludes coverage for any claim against DiPino "based on or arising out of Professional Services rendered by [DiPino] if such claim was based on or arising out of [DiPino's] supervision, subcontracting, assignment or referral of any portion of any contract, project or engagement."  (Id. at §VI, ¶ Y) ("Exclusion Y").

Finally, the Policy provides that should General Star pay damages or claims expenses "[u]nder a reservation of rights to seek reimbursement, and it is determined that [General Star] is entitled to reimbursement, upon written demand, [DiPino] shall repay such amounts to [General Star] within thirty (30) days."  (§ IX, ¶ L).

4

## II.  Procedural History

### A.  State Court History Prior to Federal Declaratory Action

On January 25, 2010, the Crislips filed suit in the Circuit Court of Brooke County, West Virginia, naming BofA, Landsafe, DiPino, BAC, and John Doe Holder. The original Complaint contained twelve causes of action.

Count I is a claim for unconscionable conduct arising under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W.Va. Code § 46A-1-101, *et seq.*, based upon the allegation that DiPino and others unconscionably induced the Crislips into the refinance loan "by misrepresenting the value of [their] home" in an "inflated appraisal." Count II asserts that DiPino and others "intentionally misrepresented and suppressed the true market value of the [Crislips'] home . . .." Count III claims that DiPino violated the West Virginia Real Estate Appraiser Licensing and Certification Act ("WV Appraiser Act"), W.Va. Code § 30-38-1, *et seq.*, by making the allegedly inflated appraisal with the intent to substantially benefit himself or another and to substantially injure the Crislips. The same count alleges that DiPino breached the standards of professional appraisal practice as defined in the WV Appraiser Act by making the allegedly inflated appraisal. Count IV asserts that the Crislips' loan is illegal pursuant to the West Virginia Residential Mortgage Lender, Broker, and Servicer Act ("WV Lender, Broker, and Servicer Act") because it contains a principal amount that exceeded the fair market value on the date of origination. Count V alleges that all of the defendants acted in the furtherance of a joint venture or through an agency relationship. Counts VI through XII are servicing claims pled solely against BAC.

On March 22, 2010, DiPino tendered his defense in the underlying state action to General Star.  By letter dated June 10, 2010, General Star agreed to defend DiPino under a reservation of rights under the Policy.  Specifically, General Star reserved its rights under the Policy to take the following actions:  (1) deny indemnity coverage for any settlement or judgment against DiPino arising out of dishonest, fraudulent, willful misconduct; (2) deny indemnity coverage for the imposition of punitive damages; (3) withdraw from DiPino's defense; (4) seek a judicial declaration of the parties' rights and obligations under the policy; (5) seek reimbursement of defense costs incurred in the defense of uncovered claims; and (6) rely upon such other applicable terms or conditions of the Policy.

On November 2, 2011, counsel for the Crislips conveyed to General Star a $500,000 policy limits demand to settle the Crislips' claims against DiPino.  The demand emphasized the willful, deliberate, and fraudulent nature of DiPino's conduct as well as his purported exposure to punitive damages liability.  The demand made clear that if the policy limits demand were not accepted and the Crislips obtained an excess judgment against DiPino, the Crislips would seek an assignment of DiPino's rights under the Policy to pursue a breach of contract and bad faith action against General Star.

By Order dated November 18, 2011, the state court set the matter for trial on April 30, 2012.  In December 2011, the Crislips filed a First Amended Complaint, adding a WVCCPA claim against BofA and BAC for directly contacting them about their loan since the commencement of their lawsuit (Count XIII).  DiPino answered the amended complaint on February 3, 2012.

B.     **Commencement of Federal Declaratory Action**

On February 22, 2012, General Star filed the instant declaratory action in this Court, pursuant to 28 U.S.C. § 2201, naming DiPino and the Crislips [Doc. 1]. General Star amended their Complaint on March 26, 2012, to join the other state court defendants [Doc. 4]. The First Amended Complaint contains nine counts.

Counts I, IV, V, and VII seek declarations regarding the application of certain exclusions of coverage in the Policy to the underlying state action. Count I seeks a declaration that to the extent that DiPino is found liable in the state action for dishonest, fraudulent, criminal, malicious conduct, General Star will have no duty to indemnify DiPino because Exclusion A excludes coverage of such claims. Count IV seeks a declaration that General Star will not have to indemnify DiPino for any award of compensatory damages for emotional distress because Exclusion E excludes coverage of such damages. Count V seeks a declaration that to the extent that DiPino is found liable for promising BofA to appraise property at a target value, General Star will have no duty to indemnify DiPino because Exclusion P excludes coverage of such claims. Count VII seeks a declaration that the Policy provides no coverage for appraisals performed by appraisers other than DiPino based upon Exclusions X and Y.

Counts II and III concern coverage for any award of punitive damages in the underlying state action. Count II seeks a declaration that General Star will have no duty to indemnify DiPino for any imposition of punitive damages in the state action because the term "damages" referenced in the insurance clause is defined as not including punitive damages. Count III seeks a declaration that General Star will have no duty to indemnify DiPino for damages in excess of the policy limits to the extent that any excess is composed

of punitive damages.

Count VI seeks a general declaration that General Star has no duty to defend or indemnify DiPino in the state court action. Count VIII seeks a declaration that General Star has no duty to indemnify DiPino for attorneys' fees liability because the term "professional services" in the insuring clause is limited to services provided by DiPino in his capacity as an appraiser and the Crislips seek an award of attorneys' fees pursuant to statutes applicable only to lending, debt collection, mortgage brokering, or loan servicing. Count IX seeks a declaration that General Star is entitled to reimbursement from DiPino for the defense of claims not covered by the Policy.

On May 4, 2012, General Star filed the instant Motion for Partial Summary Judgment against All Defendants [Doc. 12]. Specifically, General Star seeks summary judgment that it has no duty to indemnify DiPino in the underlying state action for punitive damages (Count II), compensatory damages for emotional distress (Count IV), or attorneys' fees (Count VIII).

      **C.**     **Interplay between Federal and State Actions**

On March 8, 2012, approximately two weeks after General Star instituted this action, DiPino moved the state court for a continuance of the April 30, 2012, trial date. The state court subsequently continued trial until November 13, 2012.

On March 27, 2012, the Crislips moved the state court for leave to file a Second Amended Complaint, which the court granted on March 30, 2012. The Crislips' Second Amended Complaint, filed April 4, 2012, joins General Star as a defendant and adds a cause of action for declaratory relief that mirrors General Star's federal claims for declaratory relief (Count XIV). On May 9, 2012, General Star moved the state court to

dismiss the Crislips' claims for declaratory relief in light of its federal declaratory action, a motion that the state court is scheduled to hear on August 16, 2012.

On May 25, 2012, the Crislips filed the instant Motion to Dismiss or Stay [Doc. 18], arguing that the Court should abstain from exercising its jurisdiction to grant the declaratory relief requested in this action. In support of their motion, the Crislips assert that: (1) the State of West Virginia has a stronger interest because General Star's claims for declaratory relief will require the interpretation and application of West Virginia state law and involve West Virginia borrowers, a West Virginia appraiser, and a West Virginia security; (2) the issues raised can be resolved more efficiently in the pending state court proceeding, which involves all necessary parties and has been pending since January 2010; (3) permitting the federal action to proceed will result in unnecessary entanglement between this Court and the state court due to overlapping issues of fact and law now that the state action includes identical claims for declaratory relief, and (4) the federal action is being used merely as a device for procedural fencing. The same day, the Crislips filed the instant Motion to Stay Briefing [Doc. 19] of General Star's motion for partial summary judgment.

On June 15, 2012, General Star filed a Memorandum in Opposition [Doc. 21] to the Crislips' motion, arguing that the Court should exercise its jurisdiction to hear the requests for declaratory relief. First, because resolution of its requests for declaratory relief requires only the application of basic contract principles, General Star claims that the State of West Virginia does not have such a significant interest to weigh in favor of abstention. Second, General Star contends that the Crislips cannot argue that the state court is the more efficient forum because it has yet to give any consideration to the coverage issues just recently raised by their Second Amended Complaint. Third, General Star argues that the

commonality of the issues caused by the Crislips' Second Amended Complaint could be remedied by the state court's potential dismissal of the Crislips' claims for declaratory relief after learning that this Court has elected to exercise its jurisdiction. Finally, General Star argues that it cannot be accused of engaging in procedural fencing because it filed this action before the Crislips filed their Second Amended Complaint. The same day, General Star filed a brief opposing the Crislips' motion to stay briefing [Doc. 20].

On June 18, 2012, DiPino filed the instant Motion to Dismiss or, in the Alternative, Motion to Stay Proceedings [Doc. 22], incorporating the reasons for dismissal or a stay that are articulated in the Crislips' motion to dismiss or stay. On June 19, 2012, the Crislips replied in support of their motion to stay briefing [Doc. 23]. On June 20, 2012, DiPino also joined the Crislips' motion to stay briefing [Doc. 24].

On June 22, 2012, the Crislips' filed a Reply [Doc. 25], reiterating their previous arguments on efficiency, entanglement, and procedural fencing and supplementing their prior position on the state interest factor. Specifically, the Crislips identify two complex issues of state law presented in this action that they argue would be better resolved by the state court. First, the Crislips assert that General Star's request for a declaration that it has no duty to indemnify DiPino in excess of the policy limits to the extent that such excess consists of policy-excluded punitive damages presents an unsettled issue of state law. Likewise, the Crislips contend that General Star's request for a declaration that it has no duty to indemnify DiPino for an award of attorneys' fees requires a novel determination of whether the WV Lender, Broker, and Servicer Act and the WVCCPA apply to appraisers.

On July 6, 2012, General Star adopted its previous arguments to oppose DiPino's motion to dismiss or stay [Doc. 27].

## DISCUSSION

**I.** *Colorado River / Wilton* **Abstention**

As a starting point, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." ***Colorado River Water Conservation Dist. v. United States***, 424 U.S. 800, 817 (1976). The ***Colorado River*** Court noted that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction," *Id.* at 817, and that a district court may decline to exercise its jurisdiction only under "exceptional circumstances." *Id.* at 813. However, since 1995, it has been clear that a district court need not be faced with "exceptional circumstances" to stay or dismiss duplicative litigation in the declaratory judgment context. ***Wilton v. Seven Falls Co.***, 515 U.S. 277 (1995); ***Gatewood Lumber, Inc. v. Travelers Indemnity Co.***, 898 F.Supp. 364 (S.D. W.Va. 1995). The ***Wilton*** Court offered the following explanation:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton*, 515 U.S. at 288 (footnote omitted).

Since the ***Wilton*** decision, the Fourth Circuit has articulated four factors for district courts to consider "[t]o determine whether to proceed with a federal declaratory judgment action when a parallel state court action is pending":

(1) whether the state has a strong interest in having the issues decided in its

>   courts; (2) whether the state court could resolve the issues more efficiently than the federal court; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal court; and (4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping.

*Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006) (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994).

II. <u>Analysis</u>

The Crislips argue that this Court should abstain from exercising its jurisdiction over General Star's requests for declaratory relief. After weighing the four *Nautilus* factors, this Court agrees.

   A.   **West Virginia's Interest**

First, this Court concludes that the State of West Virginia has a compelling interest in having its courts decide the particular issues raised by certain of General Star's claims for declaratory relief.

That the instant declaratory action will be governed by the substantive law of the State of West Virginia "alone provides no reason for declining to exercise federal jurisdiction." *Nautilus*, 15 F.3d at 378. Instead, a federal court may exercise its discretion to abstain "only when the questions of state law involved are difficult, complex, or unsettled." *Id.* (citations omitted).

Here, this Court is unpersuaded that resolution of certain of General Star's claims for declaratory relief will not involve questions of state law that are difficult, complex, or unsettled.

Count III, for example, seeks a declaration that General Star has no duty to indemnify DiPino for damages awarded in excess of the policy limits to the extent that such

excess consists of punitive damages, which are excluded in the Policy.  What is clear on this issue is that the Supreme Court of Appeals of West Virginia has upheld the use of punitive damages exclusions in insurance policies.  S*ee* ***State ex rel. State Auto Ins. Co. v. Risovich***, 204 W.Va. 87, 511 S.E.2d 498 (1998).  Equally clear is that the Supreme Court of Appeals has held that an insurer may be liable to its insured for personal liability in excess of the policy limits where the insurer in bad faith refused to settle within the policy limits.  See ***Shamblin v. Nationwide Mut. Ins. Co.***, 183 W.Va. 585, 396 S.E.2d 766 (1990).  What is unsettled, however, is the interplay between the rule pronounced in ***Shamblin*** and an otherwise legally acceptable punitive damages exclusion.  This Court is of the opinion that such an issue is more properly addressed by a state court.

Count VIII seeks a declaration that General Star has no duty to indemnify DiPino for an award of attorneys' fees under provisions of the WV Lender, Broker, and Servicer Act and the WVCCPA because neither Act applies to appraisers like DiPino.  At least with regard to the WVCCPA, this Court finds that this issue is also unsettled.  The Supreme Court of Appeals has yet to decide whether a consumer has a private cause of action to sue appraisers pursuant to the WVCCPA.  In fact, when recently presented with a certified question, the Supreme Court of Appeals had to "broadly and liberally" construe the WVCCPA to conclude that a consumer has a private cause of action to sue professional debt collectors pursuant to the Act.  See ***Barr v. NCB Mgmt. Servs.***, 227 W.Va. 507, 514, 711 S.E.2d 577, 584 (2011).  The issue of whether attorneys' fees are recoverable against an appraiser obviously hinges on whether there is a private cause of action against an appraiser in the first instance.  This Court is again of the opinion that this issue is more appropriately one for a state court.  The unresolved nature of these questions, therefore,

weighs in favor of abstention.

**B.     Efficiency**

As to the second factor, this Court concludes that the issues raised by the First Amended Complaint for Declaratory Relief can be resolved more efficiently in West Virginia state courts.

In evaluating efficiency concerns, a district court should focus on "'whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceedings' that are already 'pending in the state courts.'" **Nautilus**, 15 F.3d at 378 (quoting **Brillhart v. Excess Ins. Co.**, 316 U.S. 491, 495 (1942)).  In the Fourth Circuit, this question requires a "careful inquiry into 'the scope of the pending state court proceeding' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in [the state] proceeding . . ..'" **Nautilus**, 15 F.3d at 378-379 (quoting **Brillhart**, 316 U.S. at 495).

After examining the scope of the pending state proceedings, this Court concludes that the claims of all parties in interest to this action can satisfactorily be adjudicated in the state action.  Currently, the state action contains the same coverage issues presented here as well as liability issues not present in this action, suggesting that the state action would be more efficient in resolving the rights of all interested parties.  Importantly, those liability issues have been before the state court since January 2010.  That the coverage issues were just recently added in April 2012 has no effect on efficiency.  In fact, the Supreme Court of Appeals of West Virginia has permitted a plaintiff in a personal injury action pending in West Virginia state court to amend her complaint to add a count for declaratory judgment against an insurer to determine its liability under the defendant's insurance policy

after the insurer initiated a declaratory judgment action in federal court on the question of its liability under the insurance policy. See **Christian v. Sizemore**, 181 W.Va. 628, 383 S.E.2d 810 (1989). The court reasoned that "[p]ermitting an adjudication of the respective rights and duties of the parties in the same proceeding as the underlying tort action . . . enhances judicial economy by avoiding multiple lawsuits and the possibility, as here, of separate proceedings in different courts." *Id.* at 814; *accord* **W.Va. Ins. Co. v. Lambert**, 193 W.Va. 681, 458 S.E.2d 774, 777 (1995). As such, because the current procedural posture of the state litigation will lead to the resolution of both issues of liability and coverage, this Court concludes that the state court is the more efficient forum for the declaratory relief sought here.

### C.     Entanglement

The next factor asks whether allowing this action to proceed would result in unnecessary entanglement between the federal and state court systems based on the presence of "overlapping issues of fact or law." **Nautilus**, 15 F.3d at 377 (quoting **Mitcheson v. Harris**, 955 F.2d 235, 239 (4th Cir. 1992).

In light of the Crislips' Second Amended Complaint, the West Virginia case will involve litigation of the same issues of insurance coverage that this Court has been asked to resolve. Moreover, retaining jurisdiction here would require this Court to decide some of the same factual disputes that the state court will undoubtedly address. Specifically, in undertaking to determine whether General Star has a duty to indemnify DiPino, this Court would be required to resolve certain facts alleged in the Second Amended Complaint in the state court action, such as whether DiPino acted fraudulently in preparing the allegedly inflated appraisal. As such, the certainty of entanglement weighs in favor of abstention.

15

### D. Procedural Fencing

Finally, the sequence of events leading to these parallel proceedings indicates that the instant declaratory action may have been used as a form of procedural fencing. When General Star sought declaratory relief in this Court, the underlying state action was already pending in state court for over two years. Moreover, the record is clear that General Star has had notice of that pending action since March 2010, when DiPino asked the insurer to defend him. In fact, General Star has been defending DiPino in the state action since June 2010. While the issues of coverage were not technically before the state court when General Star filed this action, the insurer already knew that the coverage issues were bound to arise during the course of those proceedings. Given the pendency of the state proceedings and the inevitability of General Star's involvement in those proceedings, this Court concludes that the filing of this action may have constituted procedural fencing. *Accord* **Cont'l Cas. Co. v. Fuscardo**, 35 F.3d 963, 968 (4th Cir. 1994).

Therefore, applying the four *Nautilus* factors to the instant case, this Court is persuaded, in its discretion, to abstain from exercising jurisdiction over the instant declaratory action.

### CONCLUSION

For the foregoing reasons, this Court concludes that the Crislips' Motion to Dismiss or Stay **[Doc. 18]** and DiPino's Motion to Dismiss or, in the Alternative, Motion to Stay Proceedings **[Doc. 22]** should be, and hereby are, **GRANTED**. As such, the remaining motions **[Docs. 12 & 19]** should be, and hereby are, **DENIED AS MOOT**. Accordingly, this Court hereby **DISMISSES WITH PREJUDICE** General Star's First Amended Complaint for Declaratory Relief **[Doc. 4]**. Finally, the Clerk is directed to **CLOSE** this case and **STRIKE**

16

this civil action from the active docket of this Court.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** July 13, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE